IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JESSE WILLIAMS,

    Plaintiff

vs.                              CIVIL ACTION NO. CV O1-J-1230-S

FERALLOY CORPORATION,

    Defendant

**MEMORANDUM OPINION**

Currently pending before the court is the defendant's motion for summary judgment (doc. 12), evidentiary materials in support of its motion, memorandum of law and reply brief. The plaintiff submitted a brief in opposition thereto with supporting evidentiary materials (doc. 15 and 16). The court has reviewed the motion, the memoranda of law and the evidentiary submissions of the parties. Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes that the defendant's motion for summary judgment is due to be **GRANTED.**

### I. Procedural History

Plaintiff commenced this action on May 14, 2001 by filing a complaint (doc. 1) alleging that the defendant failed to promote him because of his race

(black) in violation of 42 U.S.C. §2000e et seq, and the Civil Rights Act of 1991.

## II. Factual Background

Plaintiff began working for defendant, Feralloy Corporation, at its Birmingham plant in November of 1972. Complaint at ¶4, and plaintiff's depo. at 20. He first worked as a floorman for six months. *Id.* He was then promoted to machine helper. *Id.* at 21. Plaintiff remained in that position for approximately five months at which time he became a machine operator apprentice. Plaintiff's depo. at 22. He was in the apprentice position for two weeks after which he became a machine operator. He held that position for seven years. *Id.* at 22-23. Plaintiff then decided he wanted to do something else, so he bid on the job as a crane operator and received that job.[1] Plaintiff was a crane operator with defendant until its Birmingham plant closed in 1999. Plaintiff's depo. at 24. During plaintiff's employment with the defendant, the Birmingham plant had two managers, from at least 1987 until 1991, Paul Abernathy, and from 1991 until the plant closed in 1999, Donald Grayson. Grayson depo. at 14, 21.

According to the relevant Collective Bargaining Agreement provisions between the plaintiff's union and the defendant, defendant would post job

---

[1] Plaintiff was a member of the United Steelworkers of America Union. Pursuant to the Collective Bargaining Agreements between defendant and plaintiff's union, plaintiff could, and did bid on the jobs he held with the defendant. Plaintiff's depo. at 21-23.

openings and the employees could bid on them. There was a grievance procedure in place allowing an unsuccessful bidder to contest management's selections. Defendant's Exh. C, Section 14 F, 1-6 and Section 6. If a bidder was successful he was entitled to receive the pay for such job within ten days, and also entitled to be placed in that job within twenty-one days of the award. *Id.* at Section 14, 6. However, no management positions were awarded through this procedure.

In 1987, the plaintiff bid on a union position in the maintenance department. Plaintiff's depo. at 33. He was the senior bidder and passed the physical required. Plaintiff's depo. at 34-35. Plaintiff then enrolled at Bessemer Tech for the schooling he needed to perform the job in the maintenance department. Receiving the necessary technical training was one of the requirements in the Collective Bargaining Agreement for becoming a maintenance apprentice. Plaintiff's depo. at 51-52, Grayson's depo. at 43-44. The employees were allowed to pick their own schools, and they usually picked the one closest to their home. Plaintiff chose Bessemer Tech because it was closest to his home. *Id.* at 43, Plaintiff's depo. at 134.

Plaintiff was not allowed to take any courses at Bessemer Tech until he had taken his entrance exams. After he did not pass his entrance exam, the defendant decided to send him to school for four weeks for a prep class. Plaintiff's depo. at

3

37-38. Defendant did not place the plaintiff in the position in the maintenance department within the twenty-one days after he was awarded the position through the bid process, nor did the defendant start paying him the maintenance position's pay after ten days as required by the Collective Bargaining Agreement. Plaintiff's depo. at 40.[2] Plaintiff went to school for seven weeks at Bessemer Tech, and then withdrew from school because he could not work in the maintenance department. *Id.* at 46. Plaintiff told the plant manager, Abernathy, that he "wanted to work in the maintenance shop instead of going to school without—and I wanted him to change my classification from a crane operator to Ap., and he said he couldn't do that. He said I had to go to school two years to get a degree before I could work in the maintenance shop." *Id.* at 47. Plaintiff did not file a grievance, because the union agreed with the defendant that going to school was one of the requirements in the Collective Bargaining Agreement for becoming a maintenance apprentice. Plaintiff's depo. at 51-52. Defendant told plaintiff the maintenance apprentice job was his if he would complete the school program and defendant did not fill the maintenance position awarded to the plaintiff until after plaintiff withdrew from school. Plaintiff's depo. at 53-54.

---

[2] As a crane operator, plaintiff received a higher rate of pay than a maintenance apprentice, so plaintiff did not suffer any loss as a result of not being moved. Plaintiff's depo. at 66-67.

Plaintiff considered bidding on a job in the maintenance department again in 1997 after he found out that the Birmingham plant was about to close. Plaintiff's depo. at 55. He went to the plant manager and discussed his plans with him. The plant manager discouraged the plaintiff from applying for the position and the plaintiff never did. Plaintiff's depo. at 56-58. Plaintiff admitted that if he had bid on that position, he would have been promoted to that position because of his seniority. Plaintiff's depo. at 58. Plaintiff stated that the only time he was denied a job or on-the-job training in the maintenance department was in 1987. Plaintiff's depo. at 70.

In February or March 1998, the defendant notified its employees at the Birmingham plant that it was closing its plant and relocating to Decatur, Alabama. Grayson Decl. at ¶ 4. Shortly after this announcement, plaintiff told the defendant that he was not interested in relocating to its Decatur, Alabama plant. Plaintiff's depo. at 65.

Management positions at defendant's plant in Birmingham were not filled through the same procedure used for positions covered by the Collective Bargaining Agreement. Rather, it was within the plant manager's sole discretion who to promote into supervisory management positions. They were not posted. The plant manager was the only person who would know when a management

position was open. Grayson's depo. at 38-39. There were only four to six total supervisory positions in the entire Birmingham plant. *Id.* at 33. In filling supervisory positions, the plant manager considered whether the employee or applicant could perform the required job responsibilities; was willing to relocate to defendant's new plant in Decatur, Alabama; had experience working in a variety of positions in the plant; had good communication skills; was able to work independently; demonstrated an ability to get along well with others; and had a good attendance and disciplinary record. *Id.* at 34. Defendant's Ans. To Int. No. 11. There were no specific educational requirements for the supervisors, nor was an employee's seniority a consideration. Grayson's depo. at 34-35. Plaintiff understood that the plant managers selected the supervisors. Plaintiff's depo. at 97-98. Between 1991 when Grayson became the plant manager and 1998, the plaintiff never expressed interest to the plant manager in becoming a supervisor. Plaintiff's depo. at 97.

On May 18, 1998, defendant promoted Shane Taylor to the position of shipping and receiving supervisor at the Birmingham plant. Grayson Decl. at ¶ 8. Plaintiff claims that he should have been promoted to this position. Plaintiff's depo. at 75, 84. The job description for that position reads:

This position reports directly to the plant manager. This position is

responsible for the shipment and receiving of all material leaving or incoming.

Specific Job Responsibilities:

1. Supervise all shipping and receiving personell (sic) insuring that all required paperwork and documentation is accurate and all loads are shipped on time as directed by sales department.

2. Maintain relationships with, and order trucks for inbound and outbound shipment by numerous trucking companies; monitor shipping and receiving rates to insure they are competitive.

3. Supervising a smooth and accurate flow of work orders through the packaging line.

4. Performs any other tasks which may be assigned by the plant manager.
Grayson Decl. Exh. A.

Plaintiff claims that he should have been promoted to this position because he was qualified for it through the number of years he had worked for the defendant and because he believed he could perform that job with training. Plaintiff's depo. at 84. Plaintiff also admitted, however, that Shane Taylor was "more qualified" than plaintiff. Plaintiff's depo. at 87.

Plaintiff also claims that there were two production supervisor positions that he should have been considered for. Plaintiff's depo. at 75-90, 108-111.

Defendant had two supervisory positions open up in the spring of 1999 when two supervisors resigned and went to work for other companies due to the relocation of defendant's plant to Decatur. Whoever succeeded these two production supervisors were required to relocate to Decatur, Alabama. Grayson's Decl. at ¶ 10. These two positions were first offered to two blacks, who rejected the promotions.[3] Subsequently, both positions were filled by two Caucasian males, one in May of 1999 and one in June, 1999. *Id.* at ¶ 11. Plaintiff filed his charge of discrimination with the EEOC on September 9, 1998. Plaintiff's Exh. 2. Nothing personally happened to plaintiff between 1996 and 1998 to make him file his charge. Plaintiff's depo. at 103-104. Plaintiff believed he was being subject to the same discrimination he experienced in 1987. Plaintiff's depo. at 104. In his EEOC charge plaintiff stated:

"Since March 1, 1987 and continuing, I have been denied on the job training that would qualify me for a promotion to a position in the maintenance department. Since May of 1998, I have been denied promotions to at least three management (salaried) positions."

**III. Standard of Review for Evaluating a Summary Judgment Motion**

---

[3] These positions were not offered to these black employees until they had "put suit in." Plaintiff's depo. at 77- 78.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the

nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249.

"The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case ....  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

## IV. Discussion

Plaintiff contends that defendant's failure to promote him into the maintenance apprentice position, failure to transfer him into that position before obtaining his technical training and failure to provide him on-the-job training for that position constitutes race discrimination in violation of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. Plaintiff's complaint ¶ 3, and plaintiff's depo. at 70. Plaintiff further contends that defendant's failure to promote him to any supervisory positions constitutes race discrimination. Plaintiff's complaint at ¶ 9. Plaintiff finally contends that this discrimination occurred on a continuing basis. *Id.* at ¶ 10.

Plaintiff provides no direct evidence of discrimination,[4] and therefore must proceed utilizing circumstantial evidence. In evaluating whether a plaintiff has offered sufficient circumstantial evidence to create a genuine issue of fact to be submitted to a jury, the court shall apply the familiar legal framework outlined in *McDonnell Douglas* and its progeny. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089 (1981); *Busby v. City of Orlando,* 931 F.2d 764, 777 (11th Cir. 1991). Under this framework, plaintiff has the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. at 1824.

---

[4]Plaintiff submitted an affidavit of Charles E. Garrett who stated:"While working at Feralloy, I was subjected to a racially hostile work environment which included hearing white employees refer to African-Americans as monkeys. This was done with the knowledge of management who did not address the issue. Plaintiff's Exh. 7 at ¶ 9 and 10. However, when Garrett's deposition was taken in his lawsuit against the same defendant, he testified upon being asked if that statement was true, that it was not true, that it never happened and that he never experienced or was subjected to any racial hostility. Defendant's supplemental submissions Exh. B at 40-41.

According to the *McDonnell Douglas* framework, plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion in question; (3) he was rejected; and (4) that other equally qualified or less qualified employees who were not members of the protected class were promoted. *See Denney v. City of Albany,* 247 F.3d 1172, 1183 (11th Cir. 2001). Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 254, 101 S. Ct. at 1094; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527 (11th Cir. 1997). Once the plaintiff establishes a *prima facie* case, the employer must articulate legitimate, nondiscriminatory reasons for the challenged employment action. *See Chapman v. AI Transport,* 229 F.3d at 1024. Once the employer articulates one or more such reasons, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing a *prima facie* case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Id.* If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the employer's articulated reasons is pretextual, the employer is entitled to summary

judgment of the plaintiff's claim. *Id.* at 1024-1025 (citing *Combs,* 106 F.3d at 1529).

The court finds that plaintiff's claim that defendant failed to promote him to the maintenance apprentice job in 1987 is time-barred. *See* 42 U.S.C. § 2000e-5(e) (a charge with the EEOC under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred). Plaintiff filed his EEOC charge on September 9, 1998. As a result, any claim arising before March 13, 1998 is time-barred. However, if a series of discrete acts of discrimination continues into the statutory filing period, then the cause of action is considered timely filed. *Roberts v. Gadsden Memorial Hosp.,* 835 F.2d 793, 799-800 (11th Cir. 1988), quoting *Coleman v. Clark Oil and Refining Co.,* 568 F. Supp. 1035, 1040 (E.D. Wis. 1983). To revive the otherwise time-barred claim under the doctrine of "continuing violation," however, it must be part of a pattern or continuing practice out of which the timely-filed incident arose. *Id.*; citing *United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

Plaintiff testified he knew that once he withdrew from Bessemer Tech, he would no longer be eligible to work as a maintenance apprentice. Plaintiff's depo. at 51-52. Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discriminations. *Delaware*

13

*State College v. Ricks,* 449 U.S. 250, 258, 101 S. Ct. 498, 504, 66 L. Ed. 431 (1980). " [T]he proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became the most painful....The emphasis is not upon the effects of earlier employment decisions; rather, it 'is [upon] whether any present violation exists.'" *Id.* The defendant's failure to transfer plaintiff to the maintenance apprentice position took place in 1987. The consequences of this action were apparent to plaintiff at the time. He withdrew despite being awarded the bid, he felt hurt and he believed defendant's action was discriminatory. He knew he could re-bid on the position and have it awarded to him due to his seniority. Plaintiff's depo. at 58. Additionally plaintiff stated that the only time he was denied a job or on-the-job training in the maintenance department was in 1987. Plaintiff's depo. at 70. The alleged failure to promote plaintiff in 1987 was a separate and distinct act which plaintiff recognized as being discriminatory in 1987 and is thus barred pursuant to 42 U.S.C. §2000e-5(e).[5] A violation does not become continuing just because plaintiff knowingly fails to seeks relief. "The continuing violation doctrine does not exist to give an

---

[5]The effect of this alleged failure to promote plaintiff on his pay is unclear. Plaintiff testified that a crane operator's rate of pay was higher than that for a maintenance apprentice, *see* plaintiff's depo. at 70, but also testified that the maintenance employees were the highest paid. plaintiff's depo. at 135-136. Thus, whether or not failure to place plaintiff in the maintenance apprentice position would have had any monetary effect on plaintiff's wages is entirely speculative.

employee who allowed a legitimate claim to lapse a second chance to file that claim." *Lane v. Ogden Entertainment, Inc.,* 13 F. Supp.2d 1261 (M.D. Ala. 1998) *citing Lewis v. Brd. of Trustees of Alabama St. Univ.* 874 F.Supp. 1299, 1303 (M.D.Ala.1995) (discussing *Roberts*, 835 F.2d at 800).

With respect to plaintiff's claims that he was denied the supervisor's position in shipping and receiving, ultimately given to Shane Taylor, and the two supervisory positions awarded to two Caucasian males in 1999 in production, plaintiff has met his burden under the *McDonnell Douglas* framework. He was a member of a protected class; he believed he was qualified for the position because he had worked in the plant for a number of years and believed he could perform the positions with training; he was not promoted to any of these supervisory positions; and defendant promoted others who were not in the protected class. Establishment of a *prima facie* case creates a presumption of unlawful discrimination, a presumption that causes the burden of production to shift to the employer to articulate legitimate, non-discriminatory reasons for the challenged employment actions. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506-07, 113 S.Ct. 2742, 2746 (1993). Defendant argues that it has articulated legitimate, non-discriminatory reasons for its employment actions. After February or March of 1998 when defendant announced that it was relocating the

plant to Decatur, Alabama, no employees could be promoted to supervisory positions unless they committed to relocating with the defendant at its new plant in Decatur. Grayson Decl. at ¶ 4. Shane Taylor was promoted in May of 1998. Exh. B to Grayson Decl. The two other positions were filled in May and June of 1999 respectively. All of these employees relocated with the plant to Decatur, Alabama, in December of 1999. Grayson Decl. at ¶ 12. The plaintiff told defendant that he was not interested in relocating to Decatur shortly after defendant's announcement that it was relocating. Plaintiff's depo. at 65. Additionally, the plant manager was of the opinion that Shane Taylor, who filled the supervisory position in shipping and receiving was better qualified than plaintiff, and plaintiff agreed. Grayson's Decl. at ¶¶ 3, 7, 8, 9, and plaintiff's depo. at 87. Because defendant has articulated legitimate, non- discriminatory reasons for its employment actions, the burden shifts back to the plaintiff to produce evidence that the defendant's articulated reasons are pretextual. *See, e.g. McDonnell Douglas*, 441 U.S. at 804, 93 S.Ct. at 1825. Plaintiff argues that defendant's reasons are pretextual because he believes his twenty-seven years with defendant made him the more qualified employee. Plaintiff's depo. at 84. Plaintiff also argues that Grayson's statement to plaintiff in November of 1998 that "he would have gave me one [supervisor's job]" if plaintiff

wanted one [6] shows pretext. Plaintiff's brief at 18. Additionally, plaintiff attempts to rely on statistical evidence. However, defendant did in fact have one black supervisor. Exh. A to defendant's supplemental submissions. With respect to the maintenance position, it is undisputed that, apart from plaintiff, no other black employee ever bid on a position in the maintenance department. Plaintiff's depo. at 100.[7]

Plaintiff's argument fails to establish that defendant's legitimate, non-discriminatory reasons for its decisions are pre-textual. First, an employer may promote an employee whom it believes to be better qualified for the position. Plaintiff himself agreed that Taylor was better qualified than plaintiff for the supervisory position in shipping and receiving. Second, it is reasonable for an employer to promote employees who are willing to relocate to the defendant's new plant as opposed to employees who have made it known to the employer that they are not going to relocate. "[F]ederal courts do not sit to second-guess the business judgment of employers...a plaintiff may not establish that an employer's proffered

---

[6] Plaintiff's depo. at 96. Grayson denied that he ever considered plaintiff for any supervisory positions. Grayson depo. at 62-64. He further testified that plaintiff did ask him if he could be considered for a supervisor position, and he told plaintiff that everybody there was considered. Grayson depo. at 66.

[7] Plaintiff's statement that other black employees were scared to "put in for" the job, is at best speculation, but certainly hearsay. Plaintiff's depo. at 101.

reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer." *Combs v. Plantation Planters,* 106 F.3d 1519, 1543 (11th Cir. 1997). "[T]he court's responsibility [is] not to second-guess the wisdom of [defendant's] reasoning, but to determine if the reasons given [are] merely a cover for discriminatory intent." *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 951 (11th Cir. 1991). The court finds that the defendant's articulated reason, that promoting employees who were willing to relocate to the defendant's new plant in Decatur, Alabama, is a reason that would motivate a reasonable employer who was about to relocate.

## V. Conclusion

The court, finding that there are no genuine issues of material fact in dispute, **ORDERS** that the defendant's motion for summary judgment is **GRANTED**. The plaintiff's claims against the defendant are **DISMISSED WITH PREJUDICE.** Each party shall bear his/its own costs.

Done this the 2/ day of March, 2002.

INGE P. JOHNSON
U. S. DISTRICT JUDGE